Our third and final case for this morning is number 22-1969, In Re Wycech. Okay, Ms. Fleetham. Good morning, your honors. Jessica Fleetham for the appellant and patent applicant, Joseph Wycech. May it please the court. The patent application at issue today relates to a way of making foam components, using a mold, supplying pellets to the mold, and using water that's already in the pellets to act as a binder to bind the pellets to one another and form the component. This differs from the prior art way in which a binder, an additional binder, is supplied to the mold to bind the pellets to one another and form the components. In the briefing, we've referred to the water that's already in the pellets as starting water, and we've explained why the starting water is binding the pellets to one another to form a component. The specific question at issue today is, do Kolaska and Glenn, the two prior art references at issue, inherently disclose the claimed feature of forming a component where the starting water acts as a binder? Our answer is no. Kolaska and Glenn explicitly disclose that something else acts as a binder. In particular, in Kolaska, steam or hot air is delivered to the mold, and, quote, the residual moisture of the steam or hot air begins to slightly dissolve the surface of the granulate beads and thus makes them sticky. So, one of the problems I think that you have with your argument is that the claim says where in the water acts as a binding agent, right? It doesn't say where in only the water acts as a binding agent, the water referring to the water used initially, right? Here, I think it's your contention that there's other things like the hot steam or the hot air that causes the binding to occur. But isn't it reasonable? It's not unreasonable to me that a fact finder could say, you know, it's not just the hot air. There's actual some moisture that comes off those pellets. And therefore, it shifted the burden to the patentee to try to show that that prima facie case hadn't been established. Your Honor, I don't disagree with the first part of your statement that it may be reasonable to assume in the prior art there is some water, residual water in the pellets that maybe contributes to or participates in binding. But that is not what the claims recite. The claims recite forming a component where the starting water acts as a binder. Kolaska and Glenn. The binding agent, not the only binding agent, right? Correct. The claims in this case do not exclude the addition of binding agents, but they do make clear that the starting water has to be, provide enough binding to actually form a component. That's different from the prior art, which explicitly teaches that added water forms the component. And that's at, the quote I just read was from Kolaska at column three lines nine through 12 at appendix 77, and that's not where Kolaska stops. Kolaska further teaches actually that the beads or pellets should not have enough water present before molding to provide any kind of binding. Quote, controlling the moisture in manufacture is important. If the moisture is too great, not only does the surface become sticky, but the granulate beads will decompose. That's same page 77, column three lines 18 through 21. So again, Kolaska teaches us the beads should not have enough moisture in them, that the pellets will become sticky or essentially be bound to one another prior to the molding step where steam or hot air is delivered to the mold and it is that added steam or hot air that acts as a binder. The other reference at issue, Glenn, teaches the same thing. There, beads are placed into a mold and hot air, steam, or a volatile agent are provided to the mold, quote, to cause at least the outer surface of each bead to become softened and pliable so that when the beads expand in volume and come into contact with one another, the beads are capable of sticking together. That is paragraph 65 of Glenn on page 87 of the appendix. Again, Glenn is teaching not that starting water is acting as a binder, although as you mentioned, your honor, it may be present during the molding step. It is the added steam, hot air, or volatile agent that is causing the binding to occur  Are you contending that the board erred in concluding that these two prior art references had starting water? No, your honor. I believe that our contention is a little bit different. We don't necessarily disagree that starting water is present during the molding step in the prior art. We do disagree that the starting water is causing the binding of the pellets to form a component, which is what claims 1 and 12, the two independent claims that issue recite. I suppose you could file a continuation application that includes a declaration from an expert interpreting these prior art references or amending the claims that you have here where it's clear from the claim language that it's only the starting water that is acting as the binding agent. Yes, your honor. I agree. Do you have any other claims, I don't know, in this application or a different one that really express that the starting water is the binding agent and the only binding agent? There are no other claims that are pending in this application to that effect. However, as you mentioned, of course, that could be the subject of a continuation application. Your honor, you mentioned also that the burden has shifted from the patent office to the applicant to show that the case of inherency has not been met, and we believe that is not the case. The patent office has not met its burden to establish a case of inherency, which comes with it a high bar to show it must necessarily be the case that the prior art has the teaching. That's from the Par Pharma case that's been cited by both sides in the briefing. So in asking the appellant, Mr. Witek, to sort of prove the negative that the starting water and the prior art is not acting as a binder, the patent office has erred. The burden has not shifted. As the director notes on page 19 of the brief, that burden shifting, the reason for it is that the patent office doesn't have laboratories to perform scientific experiments and confirm that the prior art necessarily does or does not teach the feature at issue. In this case, we do not need a laboratory because, again, the prior art tells us specifically that it is the added water, not the starting water, that's acting as the binder to form a component. So we would submit that the burden did not shift to Mr. Witek, but even if it did, based on the cited references, there is no inherent teaching of starting water acting as a binder. Now, the director focuses much on the alleged identity of processes taught by the prior art, Kalaska and Glenn, as compared to the process taught by the present application, but there is no such identity because Kalaska and Glenn teach an affirmative step of adding water to its mold and that that added water is providing the binding that is forming the component. The current claims do not have that added step. Instead, starting water is acting as a binder. What is your view of what happened to the water, the starting water, in both Glenn and Kalaska? By the time you get to the molding step in those references, did that starting water just evaporate, go poof? Your Honor, the water that's in the prior art would behave as water does and in the same way as it does in the present application, which is that it evaporates in the mold because the mold is heated and it may, at that point, contribute to or participate in the binding that's happening in the pellets, but again, that contribution or participation is not what the claims recite. The claims recite something more, which is that it is that starting water that's forming the component. The claims don't simply recite that one molecule or a dozen molecules of starting water are acting as a binder, but rather that there is enough starting water there that a component can be formed, and that's different from the prior art. So as I understand it, you're recognizing that the prior art references the starting water there. It might offer some contribution, but it's not enough to complete the process. Yes, Your Honor. To the extent there is starting water present, it would behave... So it's your view that the claim requires a certain quantum of water that is enough to complete the binding process? Yes. And so if the starting water is only 10% of the water needed to do the binding, then it's not the claimed binding. So the claims don't recite a specific amount, as the director has pointed out. The claims recite in Claim 1, forming the plurality of biodegradable pellets into a component wherein the water acts as a binding agent. And Claim 12 has similar language, except that it reads, whereby the water acts as a binding agent. And again, we're referring to starting water. So we know from the claims, the starting water is forming the component, even though it doesn't specify an amount of water present at the time. So I'm sort of confused as to why we're here, which builds on the question that Judge Chen asked you. I mean, your client, facing a rejection, could have just amended the claims to make clear the claim construction you say the board should have adopted. Why didn't that happen? Why are we having to deal with an appeal? Well, truthfully, Your Honor, I think the applicant in this case and the examiner were sort of talking past one another, and a potential amendment or continuation didn't really become clear until the issue was flushed out by the PTAB and later in the briefing in this case. If there are no other questions, I'll reserve the rest of my time for rebuttal. Okay. Your Honors, and may it please the Court, substantial evidence supports the Board's determination that the starting water of the prior art inherently acts as a binding agent. The prior art discloses the same starting materials, the same process steps as claimed, and the same processing conditions as described in the 309 application. This gave the Board a sound basis to conclude that the starting water that is in the prior art inherently acts as a binding agent. And under this Court's precedent, that shifted the burden to Wychak to prove that it was not inherent, a burden that Wychak did not meet. Is there something in either the Glenn or Kolaska reference that you can point to that gives us, that would give us some comfort that there is in fact still some water that exists during, that can act as, at least contribute to acting as a binding agent, and that it hasn't all evaporated somehow during an earlier step in the process? Yes, Your Honor. As the Board noted, because the evaporation argument was made before the Board and then has been dropped on appeal by Wychak. But as the Board noted, in Kolaska at Appendix 182, it specifically says that after the extrusion process, which is right before the molding, which is where the water would act as a binding agent, that the granulate beads comprise starch, polyvinyl alcohol, and water. They noted, the Board noted, that there was never any argument by Wychak that the Glenn did not also have an amount of water present in these pre-molded steps that would not act as a binding agent. But you can also look at the exact similarity of processing steps. So you have the same amount of water. If you look at the water in the Wychak application, it's 15 to 60 percent that matches the amount in Kolaska that's 17 to 18 percent. You extrude it at the exact same temperatures. So I would propose that if it evaporates in the prior art, it would also evaporate in Wychak's process. But because they say the starting water is still there, and it acts as a binding agent, the identity of process steps means it's still there in the prior art, and it inherently acts as a binding agent. They have not met their burden to show that it was a different process. The identity of process is what sets up the conclusion that the starting water inherently acts as a binding agent. They could have amended their claims to show that there was a different processing steps, different conditions, different starting materials. As Your Honor, Judge Stoll noted, that they could have excluded the addition of steam or hot air. In fact, they did not do any of that. And if you look at the identity of processing steps, including the fact that Wychak's application says that they use steam and hot air in the molding step. So if it's good for the goose, it's good for the gander. It's in their application. There's no reason that, as opposing counsel says, water acts as water. There's no reason that the water that's present in the prior art would not act as a binding agent under the same conditions that Wychak's application's water acts as a binding agent. I'd like to just make one clarification in response to the comment about Kaleska's paragraph about the water, there not being too much water, so that granular beads don't stick together, and that's in appendix 183. I think it's important to note that what that paragraph is talking about is the beads in the final shaped body. So that is after the molding step. So what we're talking about here in the process steps is the beads going into molding. There you want them to be sticky. They stick together, the water makes them sticky. After that, naturally, you don't want your shaped body that's protecting your TV or your microwave to be sticky. You want the final shaped body to be not sticky. And that's what the paragraph, or excuse me, the lines 18 to 21 that Wychak's counsel has pointed out. That is the shaped body, and that's also shown in claim six, which is in column four of appendix 183. That line there that they pointed out is specifically talking about the shaped body and not saying that there's any low amount of moisture in the pre-molded granular beads. So unless your honors have any other questions, because the only issue here is the inherency, we ask the court to affirm the board's rejection of the claims as anticipated and obvious. Okay, thank you. Ms. Fleer. Thank you, your honors. To address a few points. First, appellant disagrees that the prior art teaches the same process as the present application because the prior art teaches adding water to the mold. The present application does not do that, and the claims recite that starting water is acting as a binder. That begs the question, if the starting water and the prior art were acting as a binder to form a component, why would those references need to add additional water into their mold? Another thing I'd like to address, the question is not in this case whether water is present or whether it contributes to binding, as we've already discussed some. Rather, the question is, is the starting water in the prior art acting as a binder to form a component? The answer is no, again, because there are explicit teachings in the prior art that it's the added water acting as a binder. Lastly, with respect to opposing counsel's statement that the present application teaches providing steam or hot air to the mold during the molding step, that steam or hot air is provided outside of the mold to heat it, not inside the mold to act as a binder. Paragraph 39 of the present application, which is at appendix 26, mimics the language of the claims, states that no additional binder is added, the starting water in the pellets is acting as a binder. Unless there are any additional questions, we would ask that this court reverse the PTAB and allow Mr. Wyethuysen's patent to grant. Thank you.